IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**UNITED STATES OF AMERICA**,  Criminal Case No. 09-354-01-KI

       Plaintiff,

       vs.  OPINION AND ORDER

**SIMON TORRES-PALOMERA**,

       Defendant.

       Dwight C. Holton
       United States Attorney
       John C. Laing
       United States Attorney's Office
       1000 S.W. Third Ave., Suite 600
       Portland, Oregon  97204

          Attorneys for Plaintiff

Page 1 - OPINION AND ORDER

John E. Storkel
1415 Liberty Street, SE
Salem, Oregon  97302

  Attorney for Defendant

KING, Judge:

  Defendant Simon Torres Palomera is charged in a one-count indictment with conspiracy to manufacture, and to possess with the intent to distribute, more than one thousand marijuana plants, in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 846, and 18 U.S.C. § 2.  Pending before me are Defendant's Motion to Suppress Evidence (#59) and Motion to Suppress Statements of Defendant (#60).

## FACTS

  The following facts were adduced at an evidentiary hearing:

  Law enforcement discovered a marijuana grow operation in a Umatilla National Forest drainage in Oregon during the summer of 2008.  They set up surveillance of the spot the following summer.  On August 4, 2009, an interagency team raided the grow operation and detected four suspects who fled on foot.  Law enforcement later apprehended the four suspects and learned from witnesses and suspects that defendant Simon Torres Palomera had been providing food, camping equipment, fertilizer, irrigation equipment, and other growing supplies to the on-site growers.  Torres Palomera's Chevy Tahoe was also captured on the trail cameras driving to the grow operation.

  Around 7:00 pm on August 16, 2009, U.S. Forest Service ("USFS") Law Enforcement Officer Jon Matye conducted a "knock and talk" at Torres Palomera's house in Ephrata,

Washington. Officer Matye was initially alone and was not in uniform. His clothing covered his gun. Torres Palomera answered the door and Officer Matye introduced himself in English saying he was a police officer. He asked for permission to enter the house; Torres Palomera made a wide sweeping motion with his arm, which Officer Matye understood to be an invitation to enter.

Approximately thirty seconds later, Matthew Valenta, a Spanish-speaking USFS agent, in uniform with a gun visible on his duty belt, joined Officer Matye at the door. By this time, Torres Palomera was seated on the couch either sitting quietly or "texting" on his cell phone. Agent Valenta asked Torres Palomera in Spanish if the officers could look around the house. Torres Palomera said yes. The officers did not show their firearms, did not threaten Torres Palomera, did not frisk him, did not say they could get a search warrant, and did not place him under arrest.

The only other person in the house was Torres Palomera's three-year-old daughter. The officers asked that Torres Palomera's wife, Nancy Mendoza, come home from work to watch the little girl. Mendoza arrived at the house and identified Torres Palomera in a photograph taken near the marijuana grow site.

Approximately twenty minutes into the search, Grant County Sheriff's Deputy Joe Harris arrived at the house. He was in uniform with his gun in his holster.

The officers found store receipts, fraudulent identification, cell phones, and pictures of camping equipment in the house. After the officers seized this evidence, and after Mendoza had identified Torres Palomera in the photograph, the officers arrested Torres Palomera, which was approximately thirty to thirty-five minutes into the search. Deputy Harris, who is bilingual in Spanish, read Torres Palomera his Miranda rights in Spanish from a prepared card on the front

Page 3 - OPINION AND ORDER

lawn away from his daughter. Torres Palomera responded that he understood his rights, but Deputy Harris does not remember Torres Palomera's exact response.

The USFS officers finished searching the house, and were at the house a total of about 45 minutes from start to finish.

About ten minutes after he was arrested, officers at the Grant County Sheriff's Office interviewed Torres Palomera at the police station. They video recorded the interview. Deputy Harris interpreted for Torres Palomera. Torres Palomera admitted to driving several of the co-defendants to Ukiah, Oregon (near the grow site) and visiting them there.

## LEGAL STANDARDS

The government must prove that a consent to search is voluntary by a preponderance of the evidence. United States v. Matlock, 415 U.S. 164, 177 (1974). Consent to search is valid if the consent was freely and "voluntarily given, and not the result of duress or coercion, express or implied." Schneckloth v. Bustamonte, 412 U.S. 218, 248-49 (1973). Whether the consent given to search was freely and voluntarily given is a question of fact to be determined by the totality of the circumstances. Id.

The factors that a court considers in determining whether the consent to search was voluntary may include, but are not limited to: (1) whether the defendant was in custody; (2) whether the arresting officers had their guns drawn; (3) whether Miranda warnings were given prior to the search; (4) whether the defendant was told he had the right to withhold consent; and (5) whether the officers claimed that they could obtain a search warrant. United States v. Torres-Sanchez, 83 F.3d 1123, 1129 (9th Cir. 1996) (citing United States v. Castillo, 866 F.2d 1071, 1082 (9th Cir. 1988)). No one factor is dispositive and the fact that some of the factors are

Page 4 - OPINION AND ORDER

not established "does not automatically mean that consent was not voluntary." Torres-Sanchez, 83 F.3d at 1130; Castillo, 866 F.3d at 1082.

Before law enforcement officials may question a suspect in custody, the officials must inform the suspect that he has a right to remain silent, that his statements may be used against him in court, that he has the right to the presence of an attorney, and that if he cannot afford an attorney, one will be appointed for him prior to questioning. Miranda v. Arizona, 384 U.S. 436, 479 (1966). A valid waiver of *Miranda* rights must be voluntary, knowing, and intelligent. United States v. Bautista-Avila, 6 F.3d 1360, 1365 (9th Cir. 1993). The prosecution must prove that "the defendant was aware of 'the nature of the right being abandoned and the consequences of the decision to abandon it.'" United States v. Garibay, 143 F.3d 534, 536 (9th Cir. 1998) (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)).

Additionally, the government must establish the voluntariness of petitioner's statements by a preponderance of the evidence. United States v. Kelley, 953 F.2d 562, 564 (9th Cir. 1992). When considering whether statements are voluntary, a court must consider the totality of the circumstances, including the characteristics of the accused and the details of the interrogation. Id. A statement is "involuntary only if the police use coercive means to undermine the suspect's ability to exercise his free will." Henry v. Kernan, 197 F.3d 1021, 1026 (9th Cir. 1999).

> The test of voluntariness is well established: "Is the confession the product of an essentially free and unconstrained choice by its maker? . . . The line of distinction is that at which governing self-direction is lost *and compulsion, of whatever nature or however infused*, propels or helps to propel the confession."

Id. at 1026-27 (quoting Culombe v. Connecticut, 367 U.S. 568, 602 (1961) (alteration in the original)).

Page 5 - OPINION AND ORDER

Overreaching includes lengthy questioning, deprivation of food or sleep, physical threats of harm, and psychological persuasion. Kelley, 953 F.2d at 565. When there is alleged psychological coercion, the issue is "whether the defendant's will was overborne" when he confessed. United States v. Miller, 984 F.2d 1028, 1031 (9th Cir. 1993). Deception does not render a confession involuntary. Id.

**DISCUSSION**

Torres Palomera moves to suppress the evidence found at his house in Ephrata, Washington, arguing that the evidence was obtained in violation of his Fourth Amendment rights because his consent was invalid and there was no probable cause to search. He also moves to suppress his statements, contending that he did not understand his *Miranda* rights or, alternatively, that he was coerced into making the statements. He also asserts that he should have been told about his right to contact his foreign consulate pursuant to the Vienna Convention's consular notification requirement.

I.      Motion to Suppress Evidence

With respect to the question of consent, Torres Palomera initially argued he did not understand what was happening because Agent Valenta did not speak the proper Spanish dialect. Torres Palomera presented no evidence at the hearing placing Agent Valenta's Spanish-speaking ability in question. Accordingly, I do not consider this argument.

Torres Palomera's remaining argument is that Officer Matye asked for consent to search in English. Although Agent Valenta spoke with him in Spanish, Torres Palomera takes issue with the way in which the agent phrased his request for consent; he asked if the officers could "look around" the house.

The evidence reflects that Agent Valenta spoke to Torres Palomera in Spanish, who understood and voluntarily consented to the officers' search. In determining whether Torres Palomera's consent to search was voluntary, I note Torres Palomera was not in custody and the officers did not have their guns drawn when he allowed them to enter his home. The officers did not give *Miranda* warnings, but the lack of *Miranda* warnings does not taint the consent because Torres Palomera was not in police custody. Torres-Sanchez, 83 F.3d at 1130. Neither officer ever threatened Torres Palomera with a search warrant. Furthermore, although the officers did not tell Torres Palomera that he could refuse them entry, the evidence reflects that the officers were not coercive in any way in asking for permission to search the house.

Finally, I find no meaningful distinction between a request to "look around" and a request "to search." A reasonable person would have understood from Torres Palomera's exchanges with the officers that Torres Palomera gave consent to search the house. United States v. Gutierrez-Mederos, 965 F.2d 800, 803-04 (9th Cir. 1992). Looking at the totality of the circumstances, as I am required to do, I find the government has proven by a preponderance of the evidence that Torres Palomera voluntarily consented to the officers' search of his house. As a result, I deny his motion to suppress evidence.

II.     Motion to Suppress Statements

Torres Palomera also moves to suppress the statements he made to the officers during the interview and any statements he made at the time of the search. He contends there is no evidence anyone read him his *Miranda* rights and, alternatively, he made the statements involuntarily because he did not understand his rights. He also suggests the officers coerced him into making

Page 7 - OPINION AND ORDER

the statements. Finally, he asserts he is entitled to suppression due to a violation of the Vienna Convention.

The evidence reflects that Deputy Harris read Torres Palomera his *Miranda* rights in Spanish from a prepared card. The prepared card contained an accurate translation of Torres Palomera's *Miranda* rights and Torres Palomera understood Deputy Harris's reading. Torres Palomera presented no evidence as to his background, experience or his conduct to undermine Deputy Harris' testimony that Torres Palomera understood his rights and waived them.

With respect to Torres Palomera's assertion of coercive tactics, I have reviewed the video recording of the interview. Two officers interviewed Torres Palomera in English. Deputy Harris translated the questions into Spanish and Torres Palomera's answers into English. Torres Palomera was not physically threatened. None of the officers made any statements or acted in any way that could be perceived as psychologically threatening or coercive. See United States v. Moreno-Flores, 33 F.3d 1164, 1170 n.5 (9th Cir. 1994) (agent's statement that defendant faced a lengthy prison sentence was not "veiled threat;" it was to assist defendant in making decision about how to proceed); United States v. Okafor, 285 F.3d 842, 847 (9th Cir. 2002) (statement that cooperation could help defendant avoid a ten to twenty year sentence did not render confession involuntary). Torres Palomera never asked for an attorney and never indicated he did not wish to talk. Considering the totality of the circumstances, I find by a preponderance of the evidence that Torres Palomera's statements were voluntary.

Torres Palomera also argues the officers neglected to tell him about his rights under the Vienna Convention. He concedes that the Supreme Court has held that even assuming the Vienna Convention created enforceable rights, there is no suppression remedy for a treaty

Page 8 - OPINION AND ORDER

violation. Sanchez-Llamas v. Oregon, 548 U.S. 331, 350 (2006). Accordingly, this is not a basis to suppress Torres Palomera's statements.[1]

Finally, in his briefing, Torres Palomera suggests the failure to notify a foreign national of his right to contact his consulate may be relevant to the question of voluntariness. However, the Ninth Circuit has implicitly rejected this argument, too. See United States v. Lombera-Camorlinga, 206 F.3d 882, 886 (9th Cir. 2000) (en banc) (confession given without consular notification not deemed involuntary).

I deny Torres Palomera's motion to suppress his statements.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress Evidence (#59) and Motion to Suppress Statements of Defendant (#60) are denied.

IT IS SO ORDERED.

Dated this     31st     day of August, 2010.

                                                            /s/ Garr M. King
                                                          Garr M. King
                                                          United States District Judge

---

[1] For the same reason, Torres Palomera gains nothing by citing to the International Court of Justice decision, Case Concerning Avena and Other Mexican Nationals (Mexico v. United States), 2004 I.C.J. 128 (Mar. 31).

Page 9 - OPINION AND ORDER